[No. C044814. Third Dist. Jan. 13, 2005.]

RECLAMATION DISTRICT NO. 684, Plaintiff and Appellant, v.
DEPARTMENT OF INDUSTRIAL RELATIONS et al., Defendants and
Respondents;
FOUNDATION FOR FAIR CONTRACTING, Real Party in Interest and
Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

Counsel

Nomellini, Grilli & McDaniel, Dante John Nomellini and Daniel A. McDaniel for Plaintiff and Appellant.

Gary J. O'Mara, Christopher Frick, Vanessa L. Holton and Sarah L. Cohen for Defendants and Respondents.

Stanton, Kay & Watson and James P. Watson for Real Party in Interest and Respondent.

Opinion

**BLEASE, Acting P. J.**—Reclamation District No. 684 (District) appeals from a judgment that denied its petition for a writ of mandamus. District seeks to vacate the determination of the Director (Director) of the Department of Industrial Relations (DIR) that the maintenance work done on a levee to protect an island in the Delta from flooding was a public works project subject to the prevailing wage laws. (Lab. Code, § 1720 et seq.)[2]

The Director is authorized to determine, pursuant to a request by an interested party, whether a "specific project or type of work to be performed" is covered under the prevailing wage laws as a public work. (Cal. Code Regs., tit. 8, §§ 16001–16002.5, hereafter Title 8.)

District contracted with a manufacturing firm to place fill on a levee in the Delta but did not require it to pay prevailing wages to its employees. The work has been performed. An interested party, the Foundation for Fair Contracting (FFC), obtained a coverage determination from the Director that the work was subject to the prevailing wage laws. District challenges the determination. It contends the maintenance work was not a "public work" because it is exempt as involving the "operation of [an] irrigation or drainage system of [a] reclamation district . . . ." (§ 1720, subd. (a)(2).) We disagree.

In the published portion of the opinion we conclude the maintenance work did not involve the operation of the District nor is there any showing the work had anything to do with irrigation or drainage.

District also argues the doctrines of res judicata and collateral estoppel barred DIR from relitigating the issue whether the maintenance work was

---

[2] A reference to a section is to the Labor Code unless otherwise designated.

public work. It also argues that the Director's determination was void as a regulation adopted in violation of the Administrative Procedure Act (APA).

We shall affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

District is a political subdivision of the State of California that exists pursuant to the provisions of Water Code sections 50000 et seq. Its jurisdiction encompasses Lower Roberts Island, an island in the Delta in San Joaquin County. The Natali levee is a dry land levee on which Natali Road is located. Its purpose is to protect Lower Roberts Island from flooding.

On April 27, 2001, District contracted with Holt Repair and Manufacturing, Inc. (Holt) to perform maintenance work on the Natali levee. It consisted of placing 13,480 tons of earth fill and 400 tons of class 2 aggregate base on the levee adjacent to the Natali Road. The purpose of the work was to maintain the levee in a condition to withstand flooding from Middle Roberts Island. The work was completed on or about June 8, 2001.

On October 9, 2001, the FFC sent a request to the DIR for a coverage determination to the Director, asking whether the work performed by Holt was a "public work" subject to the prevailing wage laws. (§ 1720; Tit. 8, § 16000 et seq.) On July 1, 2002, the Director issued a determination pursuant to Title 8, section 16001, subdivision (a) that the Natali Levee work was a public work subject to the payment of prevailing wages under sections 1720 and 1771.

District appealed the Director's determination of coverage pursuant to Title 8, section 16002.5. It argued that under principles of res judicata and collateral estoppel, a prior superior court decision involving a different project (*Dutra Construction Co. v. DIR et.al.* (Super. Ct. San Joaquin Co., 1990, No. 187912) prevented the Director from determining the Natali Levee project was a public work. District also argued that the Director's determination was a regulation adopted without compliance with the Administrative Procedure Act (APA).

The Director denied the appeal. District filed a petition for writ of mandate in the superior court. The trial court denied the petition. This appeal followed.

## DISCUSSION

### I

### Labor Code Section 1720

District argues the Director and the trial court improperly interpreted section 1720 as applied to the specific project at issue. It claims the project was exempted from the definition of public work by the exclusion from the definition of an "operation of [an] irrigation or drainage system . . . ." (§ 1720, subd. (a)(2).) We disagree.

a. *Standard of Review*

The Director's determination arises under Title 8, sections 16001 and 16002.5. Section 16001 authorizes the Director to resolve a "request [of an interested party][3] to determine coverage under the prevailing wage laws regarding either a specific project or type of work to be performed . . . ." In this case the determination involves a specific project which has been completed and therefore is not to be performed.[4] Title 8, section 16002.5 authorizes an appeal of the Director's determination. Both avenues of relief were pursued.

■ The Director's authority under Title 8, section 16002.5 is deemed to be quasi-legislative and subject to judicial review under Code of Civil Procedure section 1085. (Tit. 8, § 16002.5, subd. (c).) ■ The judicial review of the quasi-legislative act of an administrative agency is generally limited to the question whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support. (*California Ass'n. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796].) However, when "a regulation is challenged as inconsistent with the terms or intent of the authorizing statute, the standard of review is different, because the courts are the ultimate arbiters of the construction of a statute." (*Ibid*; see also *McIntosh v. Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680].)

---

[3] "When used with reference to a particular prevailing wage determination made by the Director" the term "interested party" includes "[a]ny contractor . . . or any organization, . . . or other representative of any contractor or subcontractor likely to bid on or to perform a contract for public work which is subject to the particular prevailing wage determinations . . . ." (Tit. 8, § 16000, subd. (b)(7)(1).)

[4] The parties have not suggested the phase "to be performed" modifies the term "specific project" nor does it appear to us that it does. Accordingly, we conclude that the coverage of a specific project may be determined regardless of whether work on the project has been completed.

The interpretation of a statute is a matter of law over which we exercise our independent judgment.

b. *Labor Code and Rules*

Two statutes are pertinent. Section 1771 sets forth the basic rule regarding the payment of prevailing wages on public works. It states, with exceptions not pertinent here, that "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works." (§ 1771.) It expressly provides that "[t]his section is applicable to contracts let for maintenance work." (*Ibid.*)[5]

Section 1720 generally defines "public works" as "[c]onstruction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds . . . ." (§ 1720, subd. (a)(1).)[6] It includes work done for reclamation districts, but does not include "the operation of the irrigation or drainage system of any irrigation or reclamation district . . . ." (§ 1720, subd. (a)(2).)

c. *The Contract*

The content of the contract in issue is not in dispute. It called for Holt to furnish and place approximately 13,480 tons of fill earth and 400 tons of aggregate base along the side of the Natali Levee for the price of $61,402.[7] The purpose was to protect the Lower Roberts Island from flooding. There is no showing in the record that the levee had anything to do with irrigation or

---

[5] The meaning of "maintenance" is amplified by the California Code of Regulations. (Tit. 8, § 16000.) It includes: "Routine, recurring and usual work for the preservation, protection and keeping of any publicly owned or publicly operated facility (plant, building, structure, ground facility, utility system or any real property) for its intended purposes in a safe and continually usable condition for which it has been designed, improved, constructed, altered or repaired." (*Ibid.*)

[6] Prior to 1974 section 1771 provided that prevailing wages "shall be paid to all workmen employed on public works *exclusive of maintenance work.*" (Stats. 1953, ch. 1706, § 3, p. 3455, italics added.) The italicized words were deleted in 1974 and the present language of inclusion was added. (Stats. 1974, ch. 1202, § 1, p. 2593.) Accordingly, maintenance work is within the general definition of public works. For this reason *Franklin v. City of Riverside* (1962) 58 Cal.2d 114 [23 Cal.Rptr. 401, 373 P.2d 465], cited by District, is inapposite. It relied on the pre-1974 law. (*Id.* at p. 116.)

[7] However, the invoices from Holt indicate it charged District $82,661.59.

drainage. It has been a component of District's reclamation works for more than 75 years. At the time the work was performed the levee was completely functional and had not failed or been breached. The work was done to strengthen the levee so that it would withstand flooding from Middle Roberts Island. The title of the contract documents given to bidders was "2001–2002 Levee Maintenance Project Natali Levee Rehabilitation Lower Roberts Island."

### d. *Analysis*

District apparently concedes the work in question was maintenance work, but argues that it is exempted from the definition of public work as the operational work of a reclamation district. There is no support for this contention.

■ There is no ambiguity in the statutory scheme. The general rule is that any work done for a reclamation district is "public work" and that maintenance work is included. The exception is the operation of an irrigation or drainage system. The "operation" of a system connotes the day-to-day business of running the system. This is frequently done by employees of the district.[8] The day-to-day running of an irrigation or drainage system involves such things as the turning of valves that permit an irrigation or drainage system to function. The record indicates the levee in this case operates to prevent flooding. It says nothing about irrigating or draining the land which the levee protects.

■ District failed to meet its burden of showing the work fell within the exception. (*Citizens for Improved Sorrento Access, Inc. v. City of San Diego* (2004) 118 Cal.App.4th 808, 814 [13 Cal.Rptr.3d 259].)

### II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

.

---

[8] Thus, subdivision (a)(2) of section 1720 is generally applicable only when an irrigation or reclamation district contracts out all or portions of the operation of its irrigation or drainage system in lieu of using its own employees to operate it.

*See footnote, *ante,* page 1000.

## DISPOSITION

The judgment is affirmed.

Morrison, J., and Robie, J., concurred.