[No. A128726. First Dist., Div. Two. Oct. 7, 2011.]

RELIABLE TREE EXPERTS, Plaintiff and Appellant, v.
CHRISTINE BAKER, as Acting Director, etc., Defendant and Respondent;
DEPARTMENT OF TRANSPORTATION, Real Party in Interest and
Respondent.

## Counsel

Buty & Curliano, Jason J. Curliano and Helen A. Chang for Plaintiff and Appellant.

John William Cumming for Defendant and Respondent.

Ronald W. Beals, Thomas C. Fellenz, Todd Van Santen and Alice Ramsey for Real Party in Interest and Respondent.

## Opinion

**RICHMAN, J.**—Reliable Tree Experts (Reliable) contracted with the Department of Transportation (Caltrans), a contract which called for tree pruning and removal of diseased trees along state highways. The question presented is whether Reliable was required to pay employees according to California's Prevailing Wage Law (Lab. Code, §§ 1720–1861).[1] Caltrans and the Director of the Department of Industrial Relations (Director) decided that Reliable did have to pay the prevailing wage because the work performed was "maintenance work," a type of work covered by section 1771 of the Prevailing Wage Law and the extensive formulation of "maintenance" set forth in a regulation promulgated by the Director. The trial court agreed, and denied Reliable's petition for a writ of administrative mandamus to overturn the Director's decision. We agree as well, and conclude that the Director was correct in her interpretation of section 1771 and the regulation. We reject Reliable's argument that the work it performed under the contract does not qualify as a "public work" as defined by section 1720, the part of the Prevailing Wage Law that is the general explanation of the types of work covered. We also reject its argument that the work it performed did not qualify as "maintenance." We thus affirm.

## BACKGROUND

In 2006, Caltrans advertised for bids on contract No. 04-1A3804. The "general work description" for the project furnished in the public notice was

---

[1] Statutory references are to the Labor Code unless otherwise indicated.

"Highway Planting Restoration (Remove and Prune Diseased Trees)." Caltrans's public notice for the project told potential bidders that it would be a prevailing wage project.[2] And at a "preconstruction conference"—held before Reliable submitted its bid—representatives of Caltrans and Reliable signed a checklist that recited: "The contractor to whom the contract is awarded, and any subcontractor under him, regardless of tier, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract. [¶] . . . [¶] General Prevailing Rates—As determined by the State of California, Director of Industrial Relations." Caltrans awarded the contract to Reliable, which would receive $949,600 for approximately 200 days of work.

The actual contract is not in either the administrative record or the record on appeal,[3] but the following recital in the Director's decision appears to be accepted by the parties as generally accurate: "Reliable, the prime contractor for the Project, contracted with Caltrans on or about March 22, 2006, to perform tree pruning and removal work on [state-owned] highway rights-of-way at various locations within Marin, Solano and Sonoma counties. Reliable employees worked on the Project from approximately May 13, 2006, to January 12, 2007. [¶] . . . [¶] Reliable's work on the Project . . . included brush removal, tree trimming and tree removal Approximately 80% of the trees were diseased and therefore were removed, the remaining 20% were trimmed and left in place.[4] Reliable's contract with Caltrans was for one-time work and did not involve ongoing maintenance of the subject trees by Reliable once they had been trimmed or removed. Caltrans, however, has a continuing obligation to maintain the rights-of-way and has awarded contracts to Reliable and other contractors for this purpose."

While Reliable was performing under the contract, it exchanged correspondence with Caltrans regarding whether certain Reliable employees were being

---

[2] Caltrans's "Notice To Contractors" stated: "Pursuant to Section 1773 of the Labor Code, *the general prevailing wage rate* in the county, or counties, in which the work is to be done have been determined by the Director of the California Department of Industrial Relations. These wages *are set forth in the General Prevailing Wage Rates for this project*, available at the Labor Compliance Office of the District Director of Transportation for the district in which the work is situated, and available from the California Department of Industrial Relations' Internet Web Site at: http://www.dir.ca.gov. Future effective general prevailing wage rates which have been predetermined and are on file with the Department of Industrial Relations are referenced but not printed in the general prevailing wage rates." (Italics added.) Jim Mussells, the Reliable official responsible for the project, signed a Caltrans form acknowledging that the contract called for a prevailing wage. Mussells also testified that he "looked at the prevailing wage rates when putting the bid together."

[3] At oral argument counsel represented that the contract *was* in the record, but the pages cited do not sustain the representation.

[4] Mussells estimated that 95 percent of the contract was devoted to "removal" of diseased trees and only 5 percent to trimming and pruning.

paid according to the prevailing wage rates. After the project was completed, Caltrans advised Reliable that it had "failed to pay prevailing wage to your employees who performed covered work" on the project. The amount of "wages . . . underpaid" was initially computed at approximately $63,000, but was subsequently reduced to about $57,500 for 13 specified employees. In December 2007, Reliable was notified that Caltrans was withholding payment under the contract because of Reliable's "Failure to comply with Section 1774, Payment of specified prevailing rates to workmen."

As allowed by section 1742, Reliable sought an administrative review of this decision by the Director. A Department of Industrial Relations hearing officer conducted an evidentiary hearing to consider the parties' competing statutory claims: Reliable's argument that the "tree felling, removal and heavy pruning" required by the contract did not qualify as a "public work" within the scope of section 1720, and Caltrans's argument that the contract called for "maintenance work" under section 1771 and thus did require payment of prevailing wages. Based on the work done by the hearing officer, the Director filed a written decision in March 2009. Following the reasoning of *Reclamation Dist. No. 684 v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1000 [23 Cal.Rptr.3d 269], the Director concluded that "the work that is the subject of the . . . Project constitutes 'maintenance' as defined by California Code of Regulations, title 8, section 16000, and is subject to the payment of prevailing wages pursuant to Labor Code section 1771."[5]

Reliable petitioned for a writ of administrative mandate (Code Civ. Proc., § 1094.5) to overturn the Director's decision. The trial court denied relief, stating in its order: "[Reliable] was hired to prune and remove trees and approximately 80% of the work involved removal of trees. Removing and pruning trees is 'usual' work with regard to roadways, and [Reliable's] work meets the definition of maintenance under California Code of Regulations, § 16000. Courts will liberally construe prevailing wage statutes. (See *State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 306 [76 Cal.Rptr.3d 507].) The decision in DIR Public Works Case No. 2005–2006, Tree Removal Project, County of San Bernardino Fire Department (San Bernardino) is not binding, because in San Bernardino, the tree removal was performed on privately-owned residential land, and was a one-time project designed to remove dead, dying, or diseased trees. In this case, the project involves a normal and recurring activity of maintaining the public highways."

---

[5] The Director thereby "affirmed" the "Notice of Withholding" issued by Caltrans. Because Reliable had already paid the alleged shortages to all but one of its workers—who could not be located—Reliable was only obliged to pay $6,767.22. That sum comprises $2,816.11 "wages due" to the worker, "penalties" of $1,135 as provided by sections 1775 and 1813, and "liquidated damages" in the same amount as the wages owed, as permitted by section 1742.1.

**REVIEW**

## The Work Performed Under the Contract Was Subject to the Prevailing Wage Law

In *State Building & Construction Trades Council of California v. Duncan, supra,* 162 Cal.App.4th at pages 294–296 (*Duncan*), we summarized the purposes and general operation of the Prevailing Wage Law:

■ "The Legislature has declared that it is the policy of California 'to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.' (§ 90.5, ·subd. (a).) 'This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees.' (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 987 [4 Cal.Rptr.2d 837, 824 P.2d 643].)

■ "The prevailing wage law is fairly straightforward in operation. Its general thrust is that 'Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work . . . shall be paid to all workers employed on public works.' (§ 1771.) The minimum threshold is increased to $25,000 for 'construction work,' and $15,000 for 'alteration, demolition, repair, or main-tenance work.' (§ 1771.5.)

" 'Public works' is given a broad definition, to include 'Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds, . . . [and] includes work performed during the design and preconstruction phases of construction . . . .' (§ 1720, subd. (a)(1).) The project may involve property that will remain in private hands but will be leased to the state or a political subdivision. (§ 1720.2.) However, the prevailing wage requirement does not apply to work carried out by a public agency with its own employees. (§ 1771.)

■ "The Director . . . is given the responsibility for determining the general prevailing wage according to statutory criteria. (§ 1770.) The Director fixes the prevailing wage rates for every category of worker needed for a public works project, which are then used by public entities soliciting bids for the project. (§§ 1773, 1773.2.) The Director also has the authority to give opinions as to whether 'a specific project or type of work' requires compliance with the prevailing wage law. (Cal. Code Regs., tit. 8, § 16001(a)(1); see *Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th 976, 988–989.)

■ "A contractor or subcontractor who pays less than the established prevailing rate may be assessed civil penalties (§§ 1741, 1775, 1777.7), may be suspended from bidding or working on public works projects for up to three years (§§ 1777.1, 1777.7), and is also subject to criminal prosecution for failing to maintain payroll records demonstrating compliance (§§ 1776, 1777)."

Reliable's first contention requires analysis of two provisions in the Prevailing Wage Law, sections 1720, subdivision (a)(1) and 1771.

"(a) As used in this chapter, 'public works' means: [¶] (1) Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds, except work done directly by any public utility company pursuant to order of the Public Utilities Commission or other public authority. For purposes of this paragraph, 'construction' includes work performed during the design and preconstruction phases of construction including, but not limited to, inspection and land surveying work." (§ 1720, subd. (a)(1).)

"Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works. [¶] This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces. This section is applicable to contracts let for maintenance work." (§ 1771.)

We must also consider the Director's regulation, a regulation that defines the crucial term "maintenance" and also incorporates another statute, one outside the Prevailing Wage Law. As pertinent here, the regulation provides:

"Maintenance. Includes:

"(1) Routine, recurring and usual work for the preservation, protection and keeping of any publicly owned or publicly operated facility (plant, building,

structure, ground facility, utility system or any real property) for its intended purposes in a safe and continually usable condition for which it has been designed, improved, constructed, altered or repaired.

"(2) Carpentry, electrical, plumbing, glazing [touchup painting,] and other craft work designed to preserve the publicly owned or publicly operated facility in a safe, efficient and continuously usable condition for which it was intended, including repairs, cleaning and other operations on machinery and other equipment permanently attached to the building or realty as fixtures.

"Exception:1: Janitorial or custodial services of a routine, recurring or usual nature is excluded.

"Exception:2: Protection of the sort provided by guards, watchmen, or other security forces is excluded.

"(3) Landscape maintenance. See Public Contract Code Section 21002.[6]

"Exception: Landscape maintenance work by 'sheltered workshops' is excluded."[7] (Cal. Code Regs., tit. 8, § 16000 (Regulation 16000); see id., § 16001, subd. (f) ["Public works contracts for maintenance are subject to prevailing wage rate payment as set forth in Section 1771 of the Labor Code."].)

" 'In conducting our review, we must exercise our independent judgment in resolving whether the project at issue constituted a "public work" within the meaning of the [prevailing wage law].' [Citation.] Where, as here, the facts are undisputed, and the purely legal issues involve the interpretation of a statute an administrative agency is responsible for enforcing, we exercise our

---

[6] This citation appears to be a misprint. Section 21002 of the Public Contract Code deals with the publication and notice requirements for sealed bids submitted to drainage districts. However, Public Contract Code section 22002 provides definitions for bidding on public contracts. Its subdivision (d) provides: " 'Public project' does not include maintenance work. For purposes of this section, 'maintenance work' includes all of the following: [¶] (1) Routine, recurring, and usual work for the preservation or protection of any publicly owned or publicly operated facility for its intended purposes. [¶] (2) Minor repainting. [¶] (3) Resurfacing of streets and highways at less than one inch. [¶] (4) Landscape maintenance, including mowing, watering, trimming, pruning, planting, replacement of plants, and servicing of irrigation and sprinkler systems. [¶] (5) Work performed to keep, operate, and maintain publicly owned water, power, or waste disposal systems, including, but not limited to, dams, reservoirs, powerplants, and electrical transmission lines of 230,000 volts and higher."

[7] A "sheltered workshop" is a nonprofit facility designed "to provide career technical skill training . . . in an adult education program for adults with disabilities." (Ed. Code, § 8092, subd. (a); see generally Lab. Code, § 1191.5; Welf. & Inst. Code, §§ 4316, 4496.) Individuals in a sheltered workshop are excluded from the definition of "employee" used in the California Fair Employment and Housing Act. (Gov. Code, § 12926, subd. (c).)

independent judgment, 'taking into account and respecting the agency's interpretation of its meaning.' [Citations.] The agency's interpretation is ' "one of several interpretative tools that may be helpful. In the end, however, '[the court] must . . . independently judge the text of the statute.' " [Citation.]' [Citations.]" (*Azusa Land Partners v. Department of Industrial Relations* (2010) 191 Cal.App.4th 1, 14 [120 Cal.Rptr.3d 27] (*Azusa*); accord, *Duncan, supra*, 162 Cal.App.4th 289, 302–304.)

In its apparent desire to avoid paying the remaining $6,767.22 (see fn. 5, *ante*), Reliable seems willing to repudiate two of the essential predicates of the contract it bid for and received. Initially, and notwithstanding what was communicated to it by Caltrans's bid notice and in disregard of what it accepted at the "preconstruction conference," Reliable contends that the work it performed under the contract it signed with Caltrans did not meet the definition in section 1720 of a "public work." In addition, Reliable construes the words "contracts let for maintenance work" in section 1771 to "strongly suggest the Legislature intended the purposes of the contract, rather than the general duties of the contracting agency, would define the type of work that is being done as it relates to whether prevailing wages must be paid."

Reliable then looks outside the Labor Code for support of its claim that "maintenance" work of state property is subject to the Prevailing Wage Law only when done by the state agency itself. The argument runs as follows: "The definition of 'public work' and 'public works contract' that are used in other statutes contemplate work that is done constructing or improving a building or structure. For example, Public Contract Code section 7103(e) provides that ' "public work" includes the erection, construction, alteration, repair, or improvement of any public structure, building, road, or other state improvement of any kind.' Public Contract Code section 1101 provides: ' "Public works contract," as used in this part, means an *agreement* for the erection, construction, alteration, repair, or improvement of any public structure, building, road, or other state improvement of any kind.' Public Contract Code section 22200 contains a similar provision: 'As used in this part: (a) "Public works contract" means . . . *a contract* . . . for the erection, construction, alteration, repair, or improvement of any public structure, building, road, or other state improvement of any kind.' Labor Code section 1774 specifically references the underlying contract between the contractor and the public agency and it provides: 'The contractor to whom the *contract* is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the *execution of the contract*.' (Emphasis added.) [¶] The language in the Public Contract Code and the Labor Code make no mention of the obligations of the contracting agency. Rather, they focus on the work that is to be performed pursuant to the contract. The statutory language is very specific in defining

the type of work that needs to be done by the contractor in order to. fall under the specific statutory provision, i.e., 'construction', 'demolition', etc."

As we read the argument, Reliable is arguing that maintenance of state property does not qualify as a "public work" for which a private party can be required by a contract with a state agency to pay prevailing wages because "maintenance" is not "[c]onstruction, alteration, demolition, installation, or repair work," the language of section 1720, subdivision (a)(1). Nothing else, not the language of section 1771, not the extensive definition in Regulation 16000, is of consequence. There are numerous reasons this contention must be rejected.

First, the scope of the Prevailing Wage Law is not to be ascertained solely from the words of section 1720, subdivision (a)(1).[8] Section 1771 is also a part of the Prevailing Wage Law, and its language must also be taken into account. (E.g., *Arntz v. Superior Court* (2010) 187 Cal.App.4th 1082, 1092 [114 Cal.Rptr.3d 561]; *Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1546 [108 Cal.Rptr.3d 429]; *In re Kenneth J.* (2008) 158 Cal.App.4th 973, 979 [70 Cal.Rptr.3d 352].) Other provisions of the Prevailing Wage Law specifying exceptions only reinforce the existence of the general principle that maintenance work is covered.[9] Reliable's selective citation of provisions in the Public Contract Code is vulnerable to the same objection, particularly in light of the statute in that code directing that "All contracts under this part shall comply with the applicable provisions of Chapter 1 (commencing with Section 1720) . . . of the Labor Code relating to public works contracts and shall contain all of the contract provisions required therein." (Pub. Contract Code, § 10128.)

Read together, sections 1720 and 1771 both define the scope of what constitutes a "public work." Just three years ago we explained that the

---

[8] A point most easily demonstrated by noting that section 1720, subdivision (a) has five other parts covering, among other things: "Work done for irrigation, utility, reclamation, and improvement districts, and other districts of this type" (*id.*, subd. (a)(2)); "Street, sewer, or other improvement work" (*id.*, subd. (a)(3)); and "[p]ublic transportation demonstration projects" (*id.*, subd. (a)(6)). In certain ways, the scope of subdivision (a)(2) is broader than that of subdivision (a)(1). (See *Azusa, supra,* 191 Cal.App.4th 1, 20–21 & fn. 10.)

[9] The Prevailing Wage Law exempts volunteers, but not "if the person is otherwise employed for compensation at any time (i) in the construction, alteration, demolition, installation, repair, or maintenance work on the same project, or (ii) by a contractor . . . that is receiving payment to perform construction, alteration, demolition, installation, repair, or maintenance work on the same project." (§ 1720.4, subd. (a)(1)(C).) It also exempts projects not exceeding $15,000 "when the project is for alteration, demolition, repair, or maintenance work, if the awarding body elects to initiate and enforce a labor compliance program" (§ 1771.5, subd. (a)) or pays "a fee to the Department of Industrial Relations for the enforcement of prevailing wage obligations in an amount that the department shall establish . . . sufficient to support the department's costs in ensuring compliance with and enforcing prevailing wage requirements on the project" (§ 1771.55, subd. (a)(3)).

interplay between them was "fairly straightforward in operation." (*Duncan, supra*, 162 Cal.App.4th 289, 295; accord, *Azusa, supra*, 191 Cal.App.4th 1, 15.) No material reason requires reconsideration of that characterization. Section 1720 may not expressly include maintenance work within the definition of public work, but section 1771 does.

Second, as Reliable acknowledges, express statutory language that would assist Reliable has been removed. "Prior to 1974 section 1771 provided that prevailing wages 'shall be paid to all workmen employed on public works *exclusive of maintenance work.*' (Stats. 1953, ch. 1706, § 3, p. 3455, italics added.) The italicized words were deleted in 1974 and the present language of inclusion was added. (Stats. 1974, ch. 1202, § 1, p. 2593.) Accordingly, maintenance work is within the general definition of public works." (*Reclamation Dist. No. 684 v. Department of Industrial Relations, supra*, 125 Cal.App.4th 1000, 1005, fn. 6.) Acceding to Reliable's contention would largely nullify the Legislature's expanding the scope of the Prevailing Wage Law by reinserting the deleted language. Such amending power is denied to us: "A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74 [109 Cal.Rptr.2d 1, 26 P.3d 332].)

Third, when construing statutory language care should be given to whether an interpretation will result in unreasonable or even absurd consequences that the Legislature cannot have intended. (E.g., *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218]; *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876].) If Reliable is correct, the last two sentences of section 1771—"This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces. This section is applicable to contracts let for maintenance work."—would become a virtual dead letter because a substantial portion of maintenance work might not qualify as a "public work" under section 1720, subdivision (a)(1).[10] Caltrans is responsible for maintaining thousands of miles of paved roads and highways. (Gov. Code, § 14520.3, subd. (b); Sts. & Hy. Code, §§ 90, 91, 137.) For reasons not disclosed in the record, it has elected not to do all of that maintenance with its own personnel. Having chosen to employ civilian contractors to perform that work, Caltrans is in effect sharing its statutory responsibility. This type of decision is clearly compatible with the Prevailing Wage Law, for otherwise the statute would be meaningless: if a state or local agency used its own employees, there would never be a need for a contract

---

[10] As will be shown with Reliable's second contention, Reliable does implicitly admit that maintenance work done by a private contractor would qualify as a "public work" if done on a regular basis, as opposed to the one-time operation Reliable did here.

with a private party. The existence of the established bidding procedures used by Caltrans is proof that the practice of hiring private contractors to perform maintenance work of government-owned or -operated property is widespread. Nullifying the practice strikes us as an absurd consequence.

The absurdity is underscored by Reliable's assault on the second fundamental predicate of the contract, i.e., whether the work it actually did was "maintenance work." Although we address this point at greater length in the next part of this opinion, it is important to note here that Reliable argues that the work it did was not maintenance because Reliable had not previously done the same work for Caltrans, and thus, *for Reliable*, the work was not "[r]outine, recurring, and usual." (Pub. Contract Code, § 22002, subd. (d), quoted at fn. 6, *ante*.) Just because this was Reliable's first contract with Caltrans does not disqualify the work as "maintenance" of Caltrans property. Reliable's argument would categorically exclude the work of all first-time contractors from the definition of "maintenance work"—and thus from the Prevailing Wage Law. Such an interpretation would be a serious impediment to achieving the statutory goals noted above.

Fourth, there is Regulation 16000 and the Director's interpretation of the application of the Prevailing Wage Law to maintenance contracts. Because that interpretation is of long standing, it is entitled to some deference. (See *Duncan, supra*, 162 Cal.App.4th 289, 302–303, and authorities cited.)[11] Our respect is increased because we believe the Director's construction is soundly reasoned—and completely harmonious with the entirety of the Prevailing Wage Law.

Underlying all of these points is an additional one noted by the trial court, the policy of liberally construing the scope of the Prevailing Wage Law. (E.g., *City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 950 [22 Cal.Rptr.3d 518, 102 P.3d 904]; *Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 578 [123 Cal.Rptr.3d 285]; *Duncan, supra*, 162 Cal.App.4th 306, 324.) That policy would hardly be advanced by a myopic reading of section 1720, subdivision (a)(1) that takes no account of the plain language of other statutes and legislative actions unambiguously pointing to a well-established, and broader, interpretation.

---

[11] For evidence of the enduring durability of the Director's interpretation, see the historical notes following Regulation 16000 in title 8 of the California Code of Regulations. The Director's opinion in the 2006 San Bernardino matter—which was mentioned in the trial court's order—is too recent to have any significant weight. In addition, that opinion is not treated by the Director as having any precedential value. (See *Duncan, supra*, 162 Cal.App.4th 289, 302–303; Gov. Code, § 11425.60.) In any event, the trial court correctly recognized its minimal utility to the analysis required here.

■ For each and all of these reasons, our independent review leads us to conclude that Reliable's contract with Caltrans did constitute a "public work" project.

### The Work Performed Under the Contract Qualified as Maintenance Work

The second of the fundamental contractual predicates Reliable wants to overturn is whether the work it actually did for Caltrans—the work Reliable knew it was going to do before it executed the contract—is properly treated as "maintenance work." Reliable contends that even if maintenance work is within the ambit of the Prevailing Wage Law, there is no substantial evidence that the tree removal work it performed actually qualifies as maintenance. Reliable points first to the language in Regulation 16000—"Routine, recurring and usual work for the preservation, protection and keeping of any publicly owned or publicly operated facility (plant, building, structure, ground facility, utility system or any real property) for its intended purposes in a safe and continually usable condition for which it has been designed, improved, constructed, altered or repaired"—and then to Public Contract Code section 22002, subdivision (d)(4), which is quoted in footnote 6, *ante*. From these sources, Reliable derives a definition of maintenance resembling something like a homeowner mowing the lawn or painting the house, work done by the same person on a recurring basis.

■ Reliable argues that its one-time contract does not qualify as maintenance because the great majority of the work under the contract involved tree removal. In its brief Caltrans demonstrates why this argument is "simply not tenable": "While Reliable's contract was for Highway Planting Restoration and limited to the removal and pruning of diseased trees in a specific area, tree maintenance, including removal and pruning is a routine, recurring and usual activity for Caltrans. There are thousands of trees on state right-of-way that must be maintained on a routine, recurring and usual basis. Tree work on [a] Caltrans right-of-way is not a 'one time project' but an on-going task which requires the use of many contracts throughout the state." Caltrans and the Director agree that "When determining whether work is 'routine, recurring and usual,' the . . . focus must be on the work in terms of the property being worked, not the terms of an individual contract."

This reasoning is irrefutable, and Reliable makes no real attempt to do so. Just because this was Reliable's first, or only, contract with Caltrans does not disqualify it as involving maintenance of Caltrans property. Reliable's argument would restrict maintenance to long-term contracts, or contracts calling for repeated performance of the same work. Nothing in the language of any of the statutes, or Regulation 16000, sustains Reliable's unstated assumption

that what is "routine" is to be determined from the contractor's viewpoint. We decline to impose it in the guise of construing the Prevailing Wage Law. (*Cornette v. Department of Transportation, supra*, 26 Cal.4th 63, 73–74.)

## DISPOSITION

The order is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.