Grimes, J., concurring and dissenting.
I concur with the majority opinion on all points except the application of the prevailing wage to the work performed by plaintiffs. In my view, the statutory provisions requiring payment of prevailing wage rates do not apply because plaintiffs are not engaged in "public works" within the meaning of the prevailing wage law ( Lab. Code, §§ 1720 - 1861 ).[1]
I agree with the majority that "[w]ork done for irrigation, utility, reclamation, and improvement districts, and other districts of this type" is not confined to "construction work." As the majority correctly points out, the prevailing wage law originally protected construction workers, and has been expanded over the years "to benefit and protect employees on public works projects." ( Lusardi Construction Co. v. Aubry (1992) 1 Cal.4th 976, 987, 4 Cal.Rptr.2d 837, 824 P.2d 643.)
But as I see it, throughout the various expansions of the term "public works" in the section 1720 definition, the term has in every case involved work on "public works projects" that in some way concerns infrastructure - the physical facilities that constitute "public works projects" or public improvements.[2] I have never seen the term applied to routine work (here, sorting recyclables) performed inside a publicly owned or operated facility, having nothing to do with work on or affecting the physical facility itself. As a consequence, I am not persuaded that the Legislature - either in 1937 or later - intended to treat "[w]ork done for ... improvement districts"
*812 in a radically different fashion from *661 work done for other agencies of the state and its political subdivisions.
I believe my construction of the definition of "public works" is entirely consonant with the intent of the Legislature, is not contradicted by the limited legislative history available on the point, and is supported by principles of statutory construction that require us to read statutory provisions in a way that does not lead to disharmony with the rest of the statute.
1. The Pertinent Statutory Provisions
For clarity, I repeat the text of the statutory provisions at issue and already quoted in the majority opinion.
The prevailing wage law requires that, "[e]xcept for public works projects of one thousand dollars ($1,000) or less," the general prevailing rate of per diem wages for similar work "shall be paid to all workers employed on public works." (§ 1771.) This prevailing wage requirement applies only to work performed under contract (not to work carried out by a public agency with its own employees), and it applies to contracts for maintenance work. (Ibid. )
Section 1720 defines "public works." There are eight categories of "public works" included in the definition. The second of these is at issue in this case.
The first category of public works ( § 1720, subd. (a)(1), hereafter section 1720(a)(1) ) is: "Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds.... For purposes of this paragraph, 'construction' includes work performed during the design and preconstruction phases of construction, including, but not limited to, inspection and land surveying work, and work performed during the postconstruction phases of construction, including, but not limited to, all cleanup work at the jobsite. For purposes of this paragraph, 'installation' includes, but is not limited to, the assembly and disassembly of freestanding and affixed modular office systems."
The second category of public works ( § 1720, subd. (a)(2), hereafter section 1720(a)(2) ) is: "Work done for irrigation, utility, reclamation, and improvement districts, and other districts of this type. 'Public work' does not include the operation of the irrigation or drainage system of any irrigation or reclamation district...." (For simplicity, I will refer to this provision as "[w]ork done for ... improvement districts," since a sanitation district is a "district[ ] of this type.")
*813 There are six additional categories of public works. They are all what I would describe as construction-related activities or work on public improvements - that is, work that in one way or another affects the infrastructure that constitutes a public facility or project. Thus, public works also include:
"Street, sewer, or other improvement work...." ( § 1720, subd. (a)(3).)
"The laying of carpet done under a building lease-maintenance contract and paid for out of public funds." ( § 1720, subd. (a)(4).)
"The laying of carpet in a public building done under contract and paid for in whole or in part out of public funds." ( § 1720, subd. (a)(5).)
"Public transportation demonstration projects...." ( § 1720, subd. (a)(6).)
"Infrastructure project grants" from a fund pursuant to the Public Utilities Code. (§ 1720, subd. (a)(7)(A).)
"Tree removal work done in the execution of a project under [ section 1720(a)(1) ]." ( § 1720, subd. (a)(8).)
Every one of these categories - except, under the majority's interpretation, *662 section 1720(a)(2) - involves work that directly affects physical facilities or improvements, i.e., infrastructure work.
2. The Rules Governing Statutory Construction
The rules of statutory construction have been repeated many times. "[W]e look first to the words of a statute, 'because they generally provide the most reliable indicator of legislative intent.' [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation]. 'In other words, " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " ' [Citation.] We are also mindful of 'the general rule that civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.' " ( Pineda v. Williams-Sonoma Stores, Inc. (2011) 51 Cal.4th 524, 529-530, 120 Cal.Rptr.3d 531, 246 P.3d 612 ( Pineda ).)
3. The Proper Construction of Section 1720(a)(2)
Plaintiffs contend, and the majority agrees, that "[w]ork done" for a sanitation district - section 1720(a)(2) - means that all work done for a *814 sanitation district by a contractor's employees, regardless of the nature of the work performed, constitutes a public works project covered by the prevailing wage law. In reaching this conclusion, the majority discusses the structure of section 1720, the statutory language, the legislative history, the administrative opinions that have construed section 1720(a)(2), and existing case authority.
While I agree with some points the majority makes, I do not reach the same conclusion. In the end, it seems to me the intent of the Legislature, as reflected in the "Public Works" chapter of the Labor Code, confines the definition of "public works" - whether "construction" or not - to work on the infrastructure that constitutes a "public works project[ ]." Sorting recyclables in a facility owned by a sanitation district is not work that in any way affects the infrastructure itself, and accordingly is not covered by the prevailing wage law.
a. The structure of section 1720
The majority begins by pointing out that section 1720(a) has eight separate categories of public works, several of which are not in any way construction work (maj. opn., ante, at pp. 643-44). An example of this is subdivision (a)(4), "[t]he laying of carpet done under a building lease-maintenance contract." (Maj. opn., ante, at p. 644.) I agree laying carpet is not construction - but it is plainly work that supports or affects a structure; it is installation of material in a physical facility. All of the eight categories of public works - except (on its face) section 1720(a)(2) - have that in common: they all involve work on or relating to buildings or other forms of physical infrastructure. I find nothing in the structure of section 1720 that lends credence to the majority's belief that the Legislature intended something different in connection with section 1720(a)(2).
b. The statutory language
The majority finds it "[s]ignificant to this appeal," and "overlooked by both parties," that the section 1720 definition of "public works" applies to the Labor Code's entire chapter on "Public Works," and not just to the article on wages (§§ 1770-1784). (Maj. opn., ante, at pp. 644-45.) I do not find that "significant," for this appeal or otherwise.
*663 Certainly, our interpretation of "public works" in the case before us may be cited as precedential for the meaning of that term in any of the statutory provisions in the chapter on "public works." The same is true of any case that has had or will have occasion to construe the term "public works" in any context. But I do not see, and the majority has not identified, any particular implications flowing from that fact. In general, when work is public work, it *815 is subject both to the prevailing wage requirements and to any other rights or protections (workers compensation, anti-discrimination, and so on) that appear in the other articles of the public works chapter. And when work is not public work, it is not subject to the prevailing wage or any of the other provisions. This does not assist me in analyzing whether sorting recyclables in a facility owned by a sanitation district is public work subject to any of the provisions of the "Public Works" chapter of the Labor Code.
c. The legislative history
I agree, as I stated at the outset, that the prevailing wage law has been expanded in coverage since the 1930's and is no longer limited to "employees ... working on construction projects." (Maj. opn., ante , at p. 646; see pp. 645-46 & fn. 14.) But that does not answer the question of what the Legislature meant when it said "[w]ork done for ... improvement districts" in section 1720(a)(2).
The majority relies heavily on the legislative history of the prevailing wage law, and principally upon a change made in 1937 from the original 1931 law. (Maj. opn., ante , at pp. 646-47.)
As the majority explains (maj. opn., ante , at p. 646), the prevailing wage law has its origin in a 1931 statute. Section 1720 appeared in 1937, with the enactment of the Labor Code. The 1931 statute used the word "construction" in the predecessor to section 1720(a)(2), stating that "[c]onstruction work done for irrigation, utility, reclamation, improvement and other districts, or other public agency, agencies, public officer or body ... shall be held to be public works within the meaning of this act." (Stats. 1931, ch. 397, § 4, p. 911, italics added.)
In the 1937 statute, the Legislature omitted the word "construction" in section 1720, subdivision (b) (now section 1720(a)(2) ). The majority concludes this omission was significant, and that the definition of "public works" in the 1937 Labor Code was not intended "to be a restatement of the definition as it had appeared in the 1931 prevailing wage law." (Maj. opn., ante, at p. 646.)
I am not persuaded that the legislative history described in the majority opinion supports the majority's conclusion, or indeed that it sheds any light on what the Legislature intended by the omission of the word "construction." The majority relies entirely on a note from the California Code Commission Office that proposed the 1937 Labor Code. The note explained that the "provisions common to all [the] definitions" of "public works" that had existed in the 1931 prevailing wage law and in four other statutes (including *816 a statute prohibiting the employment of aliens on public works) were placed in section 1720. (Maj. opn., ante, at p. 647.) I do not see how this tells us anything useful about what the Legislature intended in 1937 when the word "construction" was omitted from what is now section 1720(a)(2).[3] *664 In short, there is really no legislative history to enlighten us on the pertinent point. Perhaps that is why the Supreme Court said in 2012 that, "[w]hen the California Legislature established the Labor Code in 1937, it replaced the 1931 Public Wage Rate Act with a revised, but substantively unchanged , version of the same law." ( State Building & Construction Trades Council of California v. City of Vista (2012) 54 Cal.4th 547, 555, 143 Cal.Rptr.3d 529, 279 P.3d 1022, italics added.) The majority discounts the Supreme Court's statement, because the case did not involve section 1720. (Maj. opn., ante , at fn. 15.) Of course that is true; cases are authority only for the points actually decided. Nonetheless, the statement appears in the court's introductory explanation of California's prevailing wage law. So, in the absence of any indication elsewhere that the Legislature understood the 1937 act was effecting a substantive change in the definition of "public works," I am inclined to believe the Supreme Court was right, and the 1937 act was a "substantively unchanged[ ] version of the same law" (ibid. ) - in all respects.
I certainly agree with the majority that "[w]ork done" on its face is broader than "construction" work. (Maj. opn., ante , at p. 647.) But I cannot agree that the Legislature meant to broaden the definition to "any" work or "all" work done for improvement districts. I do not believe that in 1937 - a mere six years after the original prevailing wage statute - the Legislature intended to selectively extend the protections of the "Public Works" chapter to any and all employees of those who enter contracts with improvement districts, thus treating them differently than employees of contractors providing services to all other agencies of the state and its political subdivisions. In my view, construing "[w]ork done for ... improvement districts" to mean any work done, as opposed to work done relating to the infrastructure of the improvement district, would have been a radical change, for which I would expect to find a clear statement of legislative intent.
*817 d. The administrative opinions and existing authorities
That brings me to the case precedents that might assist us in construing section 1720(a)(2). In my view, none of them tells us very much about how to construe that provision. But what they do say comports with my view that to be covered by prevailing wage requirements, work must affect physical infrastructure in one way or another.
I agree with the majority on two points.
First, I agree this court owes no particular deference to the administrative opinions of the Department of Industrial Relations. (Maj. opn., ante, at pp. 647-49.) At the end of the day, " 'final responsibility for the interpretation of the law rests with the courts.' " ( Morris v. Williams (1967) 67 Cal.2d 733, 748, 63 Cal.Rptr. 689, 433 P.2d 697.) That is the case here.[4]
*665 Second, as the majority points out (maj. opn., ante, at pp. 648-49), no court case has addressed the precise issue before us. And one case tells us that section 1720(a)(2)"may apply independently to cover some work for an improvement district not otherwise encompassed within [ section 1720(a)(1) ]'s enumerated categories." ( Azusa Land Partners v. Department of Industrial Relations (2010) 191 Cal.App.4th 1, 21, 120 Cal.Rptr.3d 27 ( Azusa ).) With that I agree, as I do with the majority's view that sections 1720(a)(1) and 1720(a)(2) have "equal dignity." (Maj. opn., ante, at p. 648.)
But Azusa refers to "some" work - not "any" or "all" work. I do not think Azusa can be stretched to indicate support for the broader proposition that any or all work done for an improvement district is public work. On the *818 contrary, Azusa specifically speaks of "infrastructure work." Azusa says: "Although the type of governmental entity for whom the infrastructure work may be performed under [ section 1720(a)(2) ] is more limited than the entities for whom work may be done under [ section 1720(a)(1) ], the range of tasks covered by [ section 1720 ](a)(2) is broader." ( Azusa, supra, 191 Cal.App.4th at p. 20, 120 Cal.Rptr.3d 27, italics added.) I agree the range of tasks is broader, but it is not infinite. I believe it is limited as the prevailing wage law has always been limited: to work on or supporting or affecting infrastructure.
As Azusa states, the plaintiff there was "correct that ... '[ section 1720 ](a)(2) must be given meaning separate and apart from [ section] 1720(a)(1).' Nevertheless, the fact that some infrastructure is encompassed by more than one subdivision does not negate the viability of either one or the possibility that, in another case, other improvements would be considered public work under one provision, but not both." ( Azusa, supra, 191 Cal.App.4th at p. 22, 120 Cal.Rptr.3d 27, italics in original, boldface added.)
In sum, I do not see any suggestion in Azusa that any and all work done for an improvement district constitutes "public works." On the contrary, Azusa characterizes the "work" that may be performed under section 1720(a)(2) as "infrastructure work" and says only that section 1720(a)(2)"may apply independently to cover some work" not otherwise encompassed in section 1720(a)(1). ( Azusa, supra, 191 Cal.App.4th at pp. 20, 21, 120 Cal.Rptr.3d 27, italics added.) It is apparent to me that the court's reference to "some work" was a reference to infrastructure work of some kind - not to any and all work done for an improvement district.
In the end, both the majority and I can pluck out specific language from Azusa, a complex case arising in a wholly different context,[5] or from other cases on other *666 topics, to support one point or another.[6] But I think one *819 general point is important, and that is where the Azusa court "reject[ed] [the plaintiff developer's] invitation to parse the language of subdivision (a)(2) in isolation, disregarding the other subdivisions of section 1720 and the context of the overall statutory scheme to which it belongs. " ( Azusa, supra, 191 Cal.App.4th at p. 22, 120 Cal.Rptr.3d 27, italics added.)
It is the italicized point I find to be most pertinent to the resolution of this case. If viewed in complete isolation, one might conclude that "[w]ork done for ... improvement districts" is, as plaintiffs contend and as the majority holds, unqualified and unlimited in scope. But controlling authorities on statutory construction do not permit us to read one provision of a statute in isolation from the others, and in isolation from "the context of the overall statutory scheme to which it belongs." ( Azusa, supra, 191 Cal.App.4th at p. 22, 120 Cal.Rptr.3d 27.) The Supreme Court directs us to construe the words of a statutory provision " ' " ' "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " ' " ( Pineda, supra, 51 Cal.4th at p. 530, 120 Cal.Rptr.3d 531, 246 P.3d 612 ; City of Huntington Beach v. Board of Administration (1992) 4 Cal.4th 462, 468, 14 Cal.Rptr.2d 514, 841 P.2d 1034 ["all parts of a statute should be read together and construed in a manner that gives effect to each, yet does not lead to disharmony with the others"].)
Adhering to that directive, I cannot embrace a construction of section 1720(a)(2) that is untethered to the decades-long history during which prevailing wage requirements have been applied to various kinds of work involving or affecting physical facilities or infrastructure - but never, until now, to the routine operations that may be performed inside but not affecting those *667 facilities. I see no evidence the Legislature intended that all work done for improvement districts, without limitation - unlike that for all other public agencies - was to be compensated at prevailing wage rates, and I can think of no reason justifying such an anomalous result.

Further statutory references are to the Labor Code.

Black's Law Dictionary (10th ed.) at page 900 defines "infrastructure" as follows: "(1927) The underlying framework of a system; esp., public services and facilities (such as highways, schools, bridges, sewers and water systems) needed to support commerce as well as economic and residential development."

As the majority tells us, the 1931 statute prohibiting the employment of aliens on public works (declared unconstitutional decades later) did not use the word "construction." It simply provided that, for purposes of the alien employment prohibition, "[w]ork done for irrigation, utility, reclamation, improvement and other districts ... shall be held to be 'public work'...." (Stats. 1931, ch. 398, § 3, p. 914.) That same language was used in the 1937 version of section 1720(a)(2). (Maj. opn., ante, at p. 647 & fn. 16.) The significance the majority draws from this is lost on me.

That said, I do not fault the trial court for its reliance on the Biosolids case. (See The Hauling of Biosolids from Orange County (Apr. 21, 2006, Dept. of Industrial Relations, Pub. Works Case No. 2005-009) < https://www.dir.ca.gov/OPRL/coverage/year2006/2005-009.pdf>[as of Nov. 30, 2018].) Indeed, I agree with the director's statement that "[f]inding the reach of 1720(a)(2) to be unlimited in scope would be illogical and create prevailing wage obligations for any type of work performed under contract for a district regardless of the nature of that work." (Id. at p. 4.) And I do not agree with the majority (maj. opn., ante, at p. 648) that the department "reversed itself" in 2016, when the director stated that the work at issue in that case was "covered by section 1720(a)(2) because it is work done for a utility district." That was a different case with different work. The work in question was "inspection and maintenance of [the contractor's] water quality testing and analytical equipment," which was "permanently attached" as a fixture to a water district's waste water treatment facility. (Public Works Contractor Registration Requirement for Maintenance Work (Feb. 5, 2016, Dept. of Industrial Relations, Pub. Works Case No. 2015-016) pp. 3, 1, 4 < https://www.dir.ca.gov/OPRL/coverage/year2016/2015-016.pdf>[as of Nov. 30, 2018].) That was work on the infrastructure of the facility, and the director did not suggest that all work for a utility district, no matter its nature, was "public work."

Azusa involved whether the proceeds of certain bonds, paid by an improvement district to a private developer for the construction of public improvements, were "public funds," and if so whether "all construction of public improvements required as a condition of regulatory approval [was] subject to prevailing wage law, including public infrastructure constructed at private expense." (Azusa, supra, 191 Cal.App.4th at pp. 13-14, 22-23, 120 Cal.Rptr.3d 27.) Azusa addressed and rejected the developer's contention that, under section 1720(a)(2), the developer was subject to prevailing wage requirements only as to public improvement work actually performed for and paid for by the improvement district, and that section 1720(a)(1) was unnecessary to the analysis of whether the entire project was a public work. (Azusa, at p. 19, 120 Cal.Rptr.3d 27.)

Plaintiffs cite general statements from other cases that likewise do not advance their position that all work of any kind is covered by section 1720(a)(2). They quote Reclamation Dist. No. 684 v. Department of Industrial Relations (2005) 125 Cal.App.4th 1000, 23 Cal.Rptr.3d 269, where the court said the "general rule is that any work done for a reclamation district is 'public work' and that maintenance work is included." (Id. at p. 1006, 23 Cal.Rptr.3d 269.) The court held that maintenance work done on a levee to protect an island from flooding was a public works project subject to the prevailing wage law, and that the exception in section 1720(a)(2) - for the operation of an irrigation or drainage system - did not apply, because the levee operated to prevent flooding, not to irrigate or drain the land. (Reclamation Dist., at pp. 1002, 1006, 23 Cal.Rptr.3d 269.) Again, the work at issue was work on infrastructure, and the case does not support any broader proposition. The same is true of Reliable Tree Experts v. Baker (2011) 200 Cal.App.4th 785, 788, 133 Cal.Rptr.3d 186, where the court held that the plaintiff's contract with the Department of Transportation for tree pruning and removal along state highways was subject to the prevailing wage law because it was maintenance work under section 1771. The case did not involve section 1720(a)(2). The court merely observed that the scope of the law was "not to be ascertained solely from the words of [section 1720(a)(1) ]," and noted, citing Azusa , that "[i]n certain ways, the scope of subdivision (a)(2) is broader than that of subdivision (a)(1)." (Reliable Tree Experts, at p. 795 & fn. 8, 133 Cal.Rptr.3d 186.)