# IN THE SUPREME COURT OF CALIFORNIA

DAVID KAANAANA et al.,
Plaintiffs and Appellants,

v.

BARRETT BUSINESS SERVICES, INC., et al.,
Defendants and Respondents.

S253458

Second Appellate District, Division Eight
B276420 and B279838

Los Angeles County Superior Court
BC496090

March 29, 2021

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Liu, Cuéllar, Kruger, Groban, and Jenkins concurred.

Justice Kruger filed a concurring opinion, in which Chief Justice Cantil-Sakauye and Justice Jenkins concurred.

KAANAANA v. BARRETT BUSINESS SERVICES, INC.

S253458

Opinion of the Court by Corrigan, J.

California's prevailing wage law is a minimum wage provision that generally applies to those employed on public works. Different provisions define the term "public works" in various contexts. As relevant here, the term includes "work done" for certain types of government districts. (Lab. Code, § 1720, subd. (a)(2).)[1] Plaintiffs are contract workers who act as belt sorters for a county sanitation district. We hold that their work falls within the definition of public works in section 1720, subdivision (a)(2) (hereafter section 1720(a)(2)).

## I. BACKGROUND

Los Angeles County Sanitation District No. 2 (the District) maintains and operates a system for the transfer and disposal of refuse. (Health & Saf. Code, § 4741.) The Downey Area Recycling and Transfer Facility and the Puente Hills Material Recovery Facility are part of that system. At these warehouse-style sites, refuse is received, recyclables are removed, and the residual waste is transferred to landfills.

Defendant Barrett Business Services, Inc. (Barrett) contracted with the District to provide belt sorters and others to staff and operate the two facilities. These workers were under Barrett's supervision and not considered District employees. In

---

[1]    Further unspecified section references are to the Labor Code.

1

each site, refuse is deposited onto a conveyor belt and manually sorted. Belt sorters remove nonrecyclable materials, clear obstructions, sort recyclables, and put them into containers.

Plaintiffs in this class action sued Barrett and a former manager on behalf of all belt sorters employed at the two locations from April 2011 to September 2013. The complaint alleged causes of action for failure to: (1) pay minimum and/or prevailing wages; (2) pay overtime at prevailing wage rates; (3) provide meal periods; and (4) timely pay all wages owed at the time of termination. It also alleged unfair business practices and sought both civil penalties and restitution of wages. Plaintiffs alleged their work fell under section 1720(a)(2), entitling them to prevailing wage compensation. Barrett moved to strike plaintiffs' prevailing wage allegations, arguing they were not entitled to those wages because the District does not fall under the statutory definition of a covered district and plaintiffs' labor was not the type of work covered by section 1720(a)(2). The trial court granted the motion to strike.[2]

In a split decision, the Court of Appeal reversed the trial court's ruling on the motion to strike. The majority concluded that plaintiffs' belt sorting qualified as public work under

---

[2]  An order granting a motion to strike is interlocutory and generally not subject to immediate review absent extraordinary circumstances. (See *Oeth v. Mason* (1967) 247 Cal.App.2d 805, 808.) After the trial court granted Barrett's motion, the parties stipulated to certain facts and trial proceeded on plaintiffs' other claims.

section 1720(a)(2).[3] (*Kaanaana v. Barrett Business Services, Inc.* (2018) 29 Cal.App.5th 778, 798 (*Kaanaana*).)

## II.  DISCUSSION

### A.  *Standard of Review*

There is no factual dispute about the kind of work plaintiffs performed.  Whether they were entitled to the prevailing wage because their labor fell under the applicable statutory definition of "public works" is a question of law we review de novo.  (*City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 949 (*City of Long Beach*).)

Since the original public works statutes were passed nearly 90 years ago, the Legislature has enacted many provisions relating to public works.  Lawmakers have used various formulations to describe what they intended to designate as public works for purposes of these enactments. When different formulations are used over the evolving history of a concept, often reflecting the prevailing forces of the times or the realities at play in different segments of the workplace, courts occasionally encounter the need for statutory interpretation.  This is one such case.

The essence of Barrett's argument is that some definitions of public work are limited to labor that generally involves construction.  Perforce, they urge that *all* public works provisions should be interpreted as so limited.  The particular

---

[3]     The Court of Appeal also addressed plaintiffs' other trial claims, and Barrett challenged those holdings in its petition for review.  We limited the scope of review to the question of whether plaintiffs were employed on public works.

provision at issue here does not include the limitation Barrett insists upon.

### B.    The Statutory Framework

California's prevailing wage law was first enacted in 1931 as an uncodified measure.[4]  (Public Wage Rate Act or 1931 Act; Stats. 1931, ch. 397, §§ 1–6, p. 910–912.)  Congress enacted a federal counterpart (40 U.S.C. § 3141 et seq.) the same year.  Both sets of legislation responded to the dire economic conditions of the Great Depression, when private construction diminished severely and "the oversupply of labor was exploited by unscrupulous contractors to win government contracts . . . ." (*State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 294 (*Duncan*); see also *Universities Research Assn. v. Coutu* (1981) 450 U.S. 754, 773–774.)  The goal of prevailing wage laws was to give local contractors and labor a fair opportunity to work on public building projects that might otherwise be awarded to contractors who hired cheaper out-of-market labor. (*Universities Research Assn.*, at p. 774.)

The overarching purpose of the prevailing wage law is to "protect and benefit employees on public works projects." (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985 (*Lusardi*).)  "This general objective subsumes within it a number of specific goals:  to protect employees from substandard wages that might be paid if contractors could recruit labor from distant

---

[4]     The prevailing wage law replaced an earlier law that "required payment of at least $2 per day for labor on public works."  (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 554, fn. 2 (*City of Vista*), citing Stats. 1897, ch. 88, § 1, p. 90.)

cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Id*. at p. 987.) Courts liberally construe the law to fulfill these purposes. (*City of Long Beach*, *supra*, 34 Cal.4th at pp. 949–950; see also *Azusa Land Partners v. Department of Industrial Relations* (2010) 191 Cal.App.4th 1, 15 (*Azusa*).)

Generally, prevailing wages must be paid to all those "employed on public works" (§ 1771), including those "employed by contractors or subcontractors in the execution of any contract for public work"[5] (§ 1772). This requirement only applies to work performed under contract, not to "work carried out by a public agency with its own forces." (§ 1771.) The body awarding a public work contract must obtain the prevailing wage rate for each type of worker needed. (§ 1773.) A "contractor to whom the contract is awarded . . . shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract." (§ 1774.) A contractor who fails to do so is liable for the deficiency and subject to a penalty. (§ 1775.) The statutory obligation to pay prevailing wages is independent of any contractual requirement. (*Lusardi*, *supra*, 1 Cal.4th at

---

[5] The prevailing wage law uses the plural term "public works" as well as the singular term "public work." (See §§ 1720, subd. (a)(1) & (2), 1770, 1771, 1772.) We use the terms interchangeably.

pp. 981–982.) Prevailing wages must be paid regardless of any private agreement. (*Id*. at p. 988.)

"Public works" is a term of art defined by section 1720 and the sections that follow. (See §§ 1720(a), 1720.2–1720.9.) The protections afforded by the prevailing wage laws only extend to activities that qualify as public work. Section 1720(a) sets out eight separate definitions of the term. It provides in full that "[a]s used in this chapter,[6] 'public works' means all of the following: [¶] (1) Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds, except work done directly by a public utility company pursuant to order of the Public Utilities Commission or other public authority. For purposes of this paragraph, 'construction' includes work performed during the design, site assessment, feasibility study, and other preconstruction phases of construction, including, but not limited to, inspection and land surveying work, regardless of

---

[6] The chapter mentioned is chapter 1 of part 7 of division 2 of the Labor Code, entitled "Public Works." It will be referred to as the "Public Works Chapter." In addition to the above-noted prevailing wage provisions, it contains the following statutes governing aspects of employment on public works: (1) section 1778, which makes it a felony to take for one's own use wages earned by a worker for services rendered upon any public work; (2) section 1779, which makes it a misdemeanor to charge or collect a fee to assist any person in procuring or registering for public work; and (3) section 1811, which limits to eight hours the workday of any worker employed on public work. When the Labor Code was codified in 1937, this chapter also contained a statute prohibiting the employment of those who were not United States citizens. (Public Works Alien Employment Act; Stats. 1937, ch. 90, § 1850, p. 246, amended by Stats. 1973, ch. 77, § 19, pp. 129–130.) The significance of these other statutes is explained below.

whether any further construction work is conducted, and work performed during the postconstruction phases of construction, including, but not limited to, all cleanup work at the jobsite. For purposes of this paragraph, 'installation' includes, but is not limited to, the assembly and disassembly of freestanding and affixed modular office systems. [¶] *(2) Work done for irrigation, utility, reclamation, and improvement districts, and other districts of this type. 'Public works' does not include the operation of the irrigation or drainage system of any irrigation or reclamation district, except as used in Section 1778 relating to retaining wages.* [¶] (3) Street, sewer, or other improvement work done under the direction and supervision or by the authority of any officer or public body of the state, or of a political subdivision or district thereof, whether the political subdivision or district operates under a freeholder's charter or not. [¶] (4) The laying of carpet done under a building lease-maintenance contract and paid for out of public funds. [¶] (5) The laying of carpet in a public building done under contract and paid for in whole or in part out of public funds. [¶] (6) Public transportation demonstration projects authorized pursuant to Section 143 of the Streets and Highways Code. [¶] (7) (A) Infrastructure project grants from the California Advanced Services Fund pursuant to Section 281 of the Public Utilities Code. [¶] (B) For purposes of this paragraph, the Public Utilities Commission is not the awarding body or the body awarding the contract, as defined in Section 1722. [¶] (8) Tree removal work done in the execution of a project under paragraph (1)." (Italics added.)

This case involves the italicized definition, which contains three basic elements: (1) work; (2) done for an irrigation, utility, reclamation, improvement, or other similar district (a covered

district); except (3) the operation of an irrigation or drainage system for an irrigation or reclamation district (irrigation exclusion). This dispute revolves around the first element. Barrett concedes that the District is a covered district and that the irrigation exclusion does not apply.[7] But Barrett argues that the only "work" covered by section 1720(a)(2) is the work of "[c]onstruction, alteration, demolition, installation, or repair" described in the inclusive detail of section 1720, subdivision (a)(1) (hereafter section 1720(a)(1)).[8] Because plaintiffs' sorting duties did not involve any of those activities, Barrett argues they were not employed on public works under section 1720(a)(2). Plaintiffs counter that the term "work" encompasses a broader range of activities, including their own.

In essence, Barrett argues the construction and installation provision (§ 1720(a)(1)) modifies the covered district provision (§ 1720(a)(2)). Plaintiffs argue section 1720(a) sets out eight independent definitions of "public work." Plaintiffs have the better argument.

---

[7] On appeal, Barrett argued plaintiffs' work fell within that exclusion because it was the "operational" work of the District. The court concluded Barrett had waived the argument by failing to raise it in the motion to strike. Nevertheless, the court held plaintiffs' work did not fall within the exclusion because the "operation of a recycling system for a sanitation district is not the operation of an irrigation or drainage system of an irrigation or reclamation district." (*Kaanaana, supra*, 29 Cal.App.5th at p. 798.) Barrett does not challenge that conclusion.

[8] To avoid needless repetition, we refer to all of the activities encompassed in section 1720(a)(1) as construction or installation work, or construction-type work.

### C. Analysis

Familiar principles guide our consideration. Our fundamental task is to ascertain the Legislature's intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) We examine that language in the context of the entire statutory framework to discern its scope and purpose and to harmonize the various parts of the enactment. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Ibid*.) The wider historical circumstances of a law's enactment may also assist in ascertaining legislative intent, supplying context for otherwise ambiguous language. (See *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844.)

Unlike the construction and installation provision of section 1720(a)(1), the covered district provision defines public work not in terms of the tasks performed but in terms of the governmental district for which it is done. It does not set out an assortment of activities as the construction and installation provision does. Instead, the covered district provision simply refers to "work." Standing on its own, this generic term may embrace myriad endeavors. However, words used in a statute are considered in context, not isolation. Bearing this context in mind, it appears the Legislature intended the covered district provision to include a wider array of tasks than construction-

type labor. Other provisions in section 1720(a) contain limiting language when defining street and sewer work, carpet laying, demolition and infrastructure projects, and tree removal as public work. The covered district definition does not. It speaks only of "work." This lack of any limiting language is significant. Moreover, the legislative history of the statute and surrounding provisions indicate the language used by the Legislature reflected an informed choice.

### 1. Statutory Definitions of Public Works

#### a. Section 1720, subdivision (a)

When the Public Wage Rate Act was enacted in 1931, the law's application was expressly limited to workers engaged in *construction* work. (See *Metropolitan Water Dist. v. Whitsett* (1932) 215 Cal. 400, 415–416.) The law's operative provision required payment of prevailing wages "to all laborers, workmen and mechanics employed by or on behalf of" the state or a local government "*engaged in the construction of public works*, exclusive of maintenance work." (Stats. 1931, ch. 397, § 1, p. 910, italics added.) The law's definitional provision made clear that this construction limitation also applied to work done for covered districts. It specified that the following activities "shall be held to be 'public works' within the meaning of this act": (1) "*[c]onstruction work* done for irrigation, utility, reclamation, improvement and other districts, or other public agency or agencies, public officer or body"; (2) "street, sewer and other improvement work done under the direction and supervision or by the authority of any officer or public body of the state, or of any political subdivision, district or municipality thereof"; and (3) "construction or repair work done under contract, and paid for in whole or in part out of public funds, other than work done

directly by any public utility company pursuant to order of the railroad commission or other public authority." (Stats. 1931, ch. 397, § 4, pp. 911–912, italics added.)

In 1937, the Legislature enacted the Labor Code, incorporating the core provisions of the Public Wage Rate Act into the newly codified Public Works Chapter. (See Stats. 1937, ch. 90, §§ 1720–1721, 1724, 1726–1729, 1770–1777, pp. 241–244.) In section 1720, the Legislature set out the three definitions of public works that would apply to this new chapter. Two of the definitions were substantively identical to those in the Public Wage Rate Act. The covered district provision was not. The Legislature changed that definition in two ways. First, it added the irrigation exclusion and, second, it removed the word "construction" as a modifier of "work."[9]

When the Legislature alters statutory language, "as for example when it deletes express provisions of the prior version,"

---

[9]     As enacted, section 1720 provided that "[a]s used in this chapter, 'public works' means: [¶] (a) Construction or repair work done under contract and paid for in whole or in part out of public finds, except work done directly by any public utility company pursuant to order of the Railroad Commission or other public authority. [¶] (b) Work done for irrigation, utility, reclamation and improvement districts, and other districts of this type. 'Public work' shall not include the operation of the irrigation or drainage system of any irrigation or reclamation district, except as used in sections 1850 to 1854 of this code relating to employment of aliens, and section 1778 relating to retaining wages. [¶] (c) Street, sewer or other improvement work done under the direction and supervision or by the authority of any officer or public body of the State, or of any political subdivision or district thereof, whether such political subdivision or district operates under a freeholder's charter or not." (Stats. 1937, ch. 90, § 1720, p. 241.)

the presumption is that it intended to change the law's meaning. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 461.) Here, the Legislature's deletion of the word "construction" indicates an intent to expand, beyond construction work, the assortment of activities that would qualify as public works when done for a covered district. (Cf. *County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 55.)[10]

Barrett concedes the Legislature removed the word "construction" from the covered district provision. But it argues that apart from this "ambiguous deletion," there is no evidence the Legislature intended to enlarge section 1720(a)(2)'s application beyond "publicly funded construction or repair projects." Barrett points to section 2, which provides that insofar as its provisions "are substantially the same as existing provisions relating to the same subject matter, [they] shall be construed as restatements and continuations thereof and not as new enactments." Barrett also points to this court's statements in *City of Vista*, *supra*, 54 Cal.4th 547, that when the Legislature "established the Labor Code in 1937, it replaced the 1931 Public Wage Rate Act with a revised, but substantively unchanged, version of the same law" and that "the prevailing wage law's general purpose and scope remain largely unchanged." (*City of*

---

[10] Barrett and amici curiae argue that plaintiffs' interpretation of section 1720(a)(2) would make the prevailing wage law applicable to every type of contract worker doing work for a covered district, including accountants, lawyers, and other professionals. They urge this was not the Legislature's intent. We need not specify the precise outer boundaries of section 1720(a)(2) here. For our purposes, it suffices to observe that the prevailing wage law is designed to protect laborers, workers, and mechanics employed on public works (see §§ 1771, 1723) and that plaintiffs fall squarely within that class.

*Vista*, at p. 555.) Based on those authorities, Barrett contends that the "codification of the 1931 Act into the present-day Labor Code was not meant to overhaul existing law in general, or subsection 1720(a)(2) in particular."

Barrett's characterization sweeps too broadly and overlooks important qualifiers in the authorities it cites. Section 2, as might be expected in a new codification of existing law, points to the nature of the transition. *Insofar as* the codifications are *substantially the same* as existing provisions they are to be construed as restatements, not new enactments. If the Legislature intended the codification to make *no* changes from the 1931 Act, it could simply have adopted the existing language or been more categorical and said in section 2 that *any* change wrought by codification was not intended to modify existing law. It did neither. The covered district provision it codified is not substantially the same as the comparable provision in the 1931 Act. This court's general characterizations in *City of Vista* do not suggest to the contrary. That case did not address the scope of the covered district provision or any other provision in the prevailing wage law. It also used qualifying language similar to section 2.

Other textual indications in the three definitions adopted in 1937 support a conclusion that section 1720(a)(2) covers more than just construction-type work. First, the other two public works definitions clearly referred to the specific kinds of work included: "[c]onstruction . . . or repair work" and "[s]treet, sewer or other improvement work." (§ 1720, former subds. (a), (c), renumbered as subds. (a)(1), (a)(3) by Stats. 2001, ch. 938, § 2, pp. 7509–7510, italics added.) The Legislature chose not to employ such limitations as to work done for covered districts. It is not for us to insert a limitation the Legislature excluded. (See

*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1118.) A court "may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74.)

Second, section 1720(a)(2) excludes from its definition of public works the operation of an irrigation or drainage system. This exclusion would be unnecessary if the scope of section 1720(a)(2) were limited to construction-type work, as Barrett argues. The Legislature "does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so." (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.)

Barrett reads this exclusionary language differently. It starts from the premise that the covered district provision only applies to construction-type work, and thus that the operation of an irrigation or drainage system is not "public works" under that definition. It then contends that the exclusionary language should be read to mean that such operational work is *included* in the definition of "public works," but only for purposes of section 1778 and the now-repealed Public Works Alien Employment Act. This argument does not withstand scrutiny. It depends on a reading which adds the word "construction" to the first sentence of the statute, a reading we have already rejected. Moreover, if the Legislature intended section 1720(a)(2) to work as proposed, it could have done so by limiting the subdivision's reach to construction-type work, as it did in section 1720(a)(1), and then adding that "the operation of the irrigation or drainage system of an irrigation or reclamation district" also qualified as public works for limited purposes.

The plain language of section 1720(a)(2), when read in context, indicates that its scope is not limited to construction-type work. That interpretation serves the prevailing wage law's purposes. It protects those who work under contract for covered districts from substandard wages, benefits the public through the superior efficiency of well-compensated workers, and results in higher wages to make up for lack of job security and benefits that normally attach to public employment.

The proposed Labor Code, drafted by the California Code Commission in 1936, also supports a conclusion the Legislature intended to broaden the range of activities that would qualify as public work when done for a covered district. The preface to the proposed Labor Code explained that its purpose was to "present in a single statute all of the existing statutory law relating to [the] subject" of labor, including "conditions of employment." (Cal. Code Com. Office, Proposed Lab. Code (1936) p. v. (1936 Proposed Labor Code).) The public works definitions eventually codified in section 1720 were taken word for word from the Commission's proposed code. (See 1936 Proposed Lab. Code, § 1720, p. 85.) The proposed code thus provides guidance in interpreting the codified statute. (Cf. *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1194–1195 [reviewing the proposed Ins. Code to interpret the Ins. Code].)

In a note to proposed section 1720, the Code Commission explained how it devised each definition of "public works." The commission stated that subdivision (a) of the proposed statute, the substance of which is now the construction and installation provision (§ 1720(a)(1)), was taken "verbatim" from the analogous definition of public works in the 1931 Act. (1936 Proposed Lab. Code, note to § 1720, p. 85.) The covered district provision (§ 1720(a)(2)), on the other hand, was crafted from four

separate statutes governing aspects of public works employment. (1936 Proposed Lab. Code, note to § 1720, p. 85.) Those statutes were the 1931 Act, the Public Works Alien Employment Act, and former sections 653c and 653g of the Penal Code.[11] (1936 Proposed Lab. Code, note to § 1720, p. 85.) A brief summary of the scope of each provision illuminates the scope of the definition eventually adopted.

As noted, the 1931 Act only applied to "construction work." (Stats. 1931, ch. 397, § 4, pp. 911–912.) The Public Works Alien Employment Act was also adopted in 1931. (Stats. 1931, ch. 398, §§ 1–5, pp. 913–915.) It prohibited any contractor acting "upon any public work" from employing anyone who was not a United States citizen. (Stats. 1931, ch. 398, § 1, p. 913.) It identified as " 'public work' within the meaning of this act" any "[w]ork done for irrigation, utility, reclamation, improvement and other districts, or other public agency or agencies, public officer or body." (Stats. 1931, ch. 398, § 3, p. 914.) This definition did not limit its application to construction work.

Former section 653c of the Penal Code, enacted in 1905, established an eight-hour workday for "any laborer, workman, or mechanic employed upon any of the public works of," or "upon work done for," the state or any political subdivision. (Stats. 1905, ch. 505, § 1, p. 666.) It did not define public works or otherwise set out its scope. In 1929, the Legislature amended the statute to embrace "[w]ork done for irrigation, utility,

---

[11] The Code Commission also cited former section 653d of the Penal Code, which made it a felony to take, keep, or receive the wages of any laborer upon public works. (Stats. 1905, ch. 505, § 2, p. 667.) That statute, however, did not specifically define the term "public works" or delineate its scope.

reclamation and improvement districts, and other districts of this type . . . ; *provided, however,* that nothing in this section shall apply to the operation of the irrigation or drainage system of any irrigation or reclamation district." (Stats. 1929, ch. 793, § 1, p. 1603.) Two points are noteworthy. Again, the definition of public works was not limited to construction work for covered districts. And the Legislature demonstrated its ability to create exceptions or limitations when it so intended.

Former section 653g of the Penal Code made it a crime to charge a fee to register or place any person in public work, or to give information as to where such employment might be procured. (Stats. 1933, ch. 174, § 1, p. 620.) It defined the "term 'public work' as used in this section" to include "construction, alteration and repair work done for irrigation, utility, reclamation and improvement districts, and other districts of this type." (Stats. 1933, ch. 174, § 1, p. 621.) Similar to the 1931 Act, this definition limited the activities that qualified as public work when done for a covered district to construction, alteration, and repair work.

The operative provisions of each of these enactments were placed in the Public Works Chapter when the Labor Code was passed.[12] The Code Commission's explanatory note makes clear the definition of public work adopted for the covered district provision was an amalgam of different existing statutes. These various enactments demonstrate that the Legislature knew how

---

[12]    (See Stats. 1937, ch. 90, §§ 1720–1721, 1724, 1726–1729, 1770–1777, pp. 241–244 [1931 Act]; Stats. 1937, ch. 90, § 1850, p. 246 [Public Works Alien Employment Act]; Stats. 1937, ch. 90, § 1811, p. 245 [former § 653c of the Pen. Code]; Stats. 1937, ch. 90, § 1779, p. 244 [former § 653g of the Pen. Code]; Stats. 1937, ch. 90, § 1778, p. 244 [former § 653d of the Pen. Code].)

to limit the definition of public work to construction-type work but knowingly eschewed such a limitation in drafting section 1720(a)(2). That it did so undermines Barrett's argument that the unlimited term "work" in section 1720(a)(2) must be restricted by the different formulation in section 1720(a)(1).

### b.   *Barrett's Other Arguments*

Barrett argues the other seven definitions of "public works" in the current version of section 1720(a) describe activities that "consist of or [are] closely allied with the 'construction, alteration, demolition, installation, or repair' of public infrastructure." Relying on the principle "that words grouped in a list should be given related meaning" (*Third National Bank v. Impac Limited, Inc.* (1977) 432 U.S. 312, 322), Barrett urges that the term "work" in section 1720(a)(2) should be similarly limited in scope. This argument's premise is unsupported.

The types of projects included in section 1720(a)'s definitions of "public works" reflect no clear common theme, but rather a scattershot series of subjects. Section 1720(a)(4) and section 1720(a)(5) apply to carpet laying. Section 1720(a)(6) covers specific types of public transportation demonstration projects. Section 1720(a)(8) treats some tree removal work as public works. Barrett's argument might have force if the other parts of section 1720(a) centered around a unified type of work, but it has limited purchase given the actual breadth of topics treated as public works by the statute as written. Contrary to Barrett's assertion, the language of the other definitions shows that the Legislature knows how to circumscribe the range of activities that qualify as public works when it chooses to do so.

Relying on the principle of in pari materia, Barrett argues the term "work" in section 1720(a)(2) must be limited to construction work to make that statute consistent with other statutes defining public works. Barrett points to sections 1720.2, 1720.3, 1720.6, 1720.7, and 1750, subdivision (b)(1).

Statutes are considered to be in pari materia when they relate to the same person or thing, or class of persons or things, or have the same purpose or object. (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 124, fn. 4.) Such statutes should "be construed together so that all parts of the statutory scheme are given effect." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090–1091.) "Identical language appearing in separate provisions dealing with the same subject matter should be accorded the same interpretation." (*Walker*, at p. 132.)

The first four statutes cited by Barrett provide that for certain limited purposes, including the application of prevailing wage laws, the term "public works" also means: (1) "any construction work done under private contract," if certain conditions exist (§ 1720.2); (2) the hauling of certain refuse from a public works site to an outside disposal location (§ 1720.3, subd. (b)); (3) "any construction, alteration, demolition, installation, or repair work done under private contract," if certain conditions exist (§ 1720.6); and (4) "any construction, alteration, demolition, installation, or repair work done under private contract on a project for a general acute care hospital" (§ 1720.7). Barrett points out that each of these statutes limits the activities that qualify as public works to construction or infrastructure-related work. It urges us to similarly limit the types of activities that qualify as public works under section 1720(a)(2) to harmonize the statutes.

But the principle of harmonization does not authorize courts to rewrite statutes. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956.) Where the Legislature chooses to define the same term differently in two different provisions, neither definition should be "rewritten under the guise of an in pari materia construction." (*People v. Honig* (1996) 48 Cal.App.4th 289, 328.)

The last cited statute, section 1750, subdivision (b)(1), defines the phrase "public works project" for purposes of article 1.5 of the Public Works Chapter. That article addresses the rights of a nonwinning bidder to sue a winning bidder when the winning bidder violated the law to secure the bid. (§ 1750, subd. (a)(1).) It defines the phrase " 'public works project' " as "the construction, repair, remodeling, alteration, conversion, modernization, improvement, rehabilitation, replacement, or renovation of a public building or structure." (§ 1750, subd. (b)(1).) Barrett urges that the meaning of public works in section 1720(a)(2) should be similarly limited. Obviously, the phrase "public works project" is different from the term "public work." "Public works project" is used to denote the scope of the contract put out for bid. There is no indication that, when the Legislature addressed the availability of civil litigation among private parties, it intended to amend or limit the scope of the term "public work" in other contexts.

Next, Barrett argues that statutes outside the Labor Code show that the term "public works" is commonly understood as being limited to "construction of works to be owned by and used for the benefit of the public." Barrett points to the following statutes: Health and Safety Code section 50675.4, subdivision (c)(2); Health and Safety Code section 50898.2, subdivision (c)(1)(E); Health and Safety Code section 125290.65, subdivision

(b)(1)(E); Public Utilities Code section 3354; Government Code section 63036; Government Code section 5956.8; Streets and Highways Code section 27189; and Fish and Game Code section 1350, subdivision (a). All but the last of these provisions mandate payment of prevailing wages on construction projects authorized or funded by various state laws and programs.[13] According to Barrett, these statutes show that the Legislature has consistently applied prevailing wage requirements only to construction- and infrastructure-related work activities.

This argument fails for two reasons. First, the fact construction projects authorized by other statutes must comply with prevailing wage laws does not mean that those laws only apply to construction projects. Second, each of the statutes Barrett cites was enacted years after and did not purport to amend section 1720(a)(2).[14] They provide little insight as to what the Legislature intended when it enacted the covered district provision.

---

[13]    Fish and Game Code section 1350, subdivision (a) provides that agreements between the Department of Fish and Wildlife and other agencies to provide for the construction, management, or maintenance of facilities are not exempt from prevailing wages laws.

[14]    (See Stats. 1957, ch. 754, § 1 [adding § 1350 to Fish & G. Code]; Stats. 1957, ch. 1455, § 1 [adding § 27189 to Sts. & Hy. Code]; Stats. 1994, ch. 94, § 1 [adding § 63036 to Gov. Code]; Stats. 1996, ch. 1040, § 1 [adding § 5956.8 to Gov. Code]; Stats. 1999, ch. 637, § 2 [adding § 50675.4 to Health & Saf. Code]; Stats. 2000, ch. 957, § 2 [adding § 50898.2 to Health & Saf. Code]; Stats. 2001, 1st Ex. Sess. 2001–2002, ch. 10, § 1 [adding § 3354 to Pub. Util. Code)].) Section 125290.65 was added to the Health and Safety Code by an initiative measure, Proposition 71, as approved by voters in November 2004.

Finally, Barrett points to Public Contract Code sections 1101, 7103, subdivision (e), and 22200, subdivision (a), each of which defines the terms "public work" or "public works contract" for limited purposes. But again, these definitions only apply for the limited purposes involved. They do not apply to the Public Works Chapter.

### 2. *Case Law and Administrative Decisions*

The parties argue that case law and administrative decisions interpreting section 1720(a)(2) support their respective positions.

### a. *Case Law*

Plaintiffs rely on three cases: *Reclamation Dist. No. 684 v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1000 (*Reclamation Dist. No. 684*); *Azusa, supra*, 191 Cal.App.4th 1; and *Reliable Tree Experts v. Baker* (2011) 200 Cal.App.4th 785 (*Reliable Tree Experts*). Each case tangentially addressed whether labor other than construction and installation qualified as public work.

*Azusa* is the most relevant of the three. In that case, a developer challenged a ruling that contract workers doing construction work for a group of government entities, including a community facilities district, were entitled to prevailing wages under section 1720(a)(1). (*Azusa, supra*, 191 Cal.App.4th at pp. 10–13.) The developer argued that *some* of the work qualified as public work under section 1720(a)(2), because it was done for a covered district, and that only *that work* should be subject to prevailing wage requirements. It urged that, if all the work were deemed to be covered by section 1720(a)(1), section 1720(a)(2) would be rendered superfluous. (*Azusa*, at p. 19.) The Court of Appeal rejected that argument, concluding that not

all of section 1720(a)(2) is "subsumed" by section 1720(a)(1). (*Azusa*, at p. 20.) The court reasoned that section 1720(a)(2) covered work done for a narrower range of government *entities*, but that it applied to a broader range of *tasks*. (*Azusa*, at p. 20.) While section 1720(a)(1) was limited to construction-type work, section 1720(a)(2) had "no similar limitation as to the type of work that may be performed for improvement districts." (*Azusa*, at p. 20.) Though *Azusa* did not address whether the work done for the district was public work under section 1720(a)(2), the case sheds light on our understanding of the broader statutory scheme. Most significantly, *Azusa* treated section 1720(a)(1) and section 1720(a)(2) as separate provisions with "equal dignity." (*Kaanaana, supra*, 29 Cal.App.5th at p. 797.) This treatment undermines Barrett's argument that any of section 1720(a)'s definitions limits another one of its definitions. The same can be said for the other two cases plaintiffs cite. (See *Reclamation Dist. No. 684, supra*, 125 Cal.App.4th at p. 1006 ["[t]he general rule is that any work done for a reclamation district is 'public work' "]; see also *Reliable Tree Experts, supra*, 200 Cal.App.4th at p. 795, fn. 8.)

### b.    *Administrative decisions*

The Legislature has granted the Director of the Department of Industrial Relations (Department) "quasi-legislative authority to determine coverage of projects or types of work under the prevailing wage laws." (§ 1773.5, subd. (d).) Although ultimate responsibility for statutory interpretation rests with the courts, an agency's interpretation "is 'one among several tools available to the court' when judging the [statute's] meaning and legal effect." (*Oxbow Carbon & Minerals, LLC v. Department of Industrial Relations* (2011) 194 Cal.App.4th 538, 546; see also *City of Long Beach, supra*, 34 Cal.4th at p. 951.)

An agency's interpretation is entitled to deference if it is long-standing, consistent, and contemporaneous. (*Duncan*, *supra*, 162 Cal.App.4th at p. 303.) A vacillating position warrants no deference. (*Ibid.*) Such is the case here.

The trial court relied on a 2006 Department decision[15] in granting Barrett's motion. The question was whether workers hauling biosolids for a sanitation district were entitled to prevailing wages. (*Orange County Biosolids*, *supra*, at p. 1.) The Department concluded they were not, stating, "[T]he most reasonable way to define the scope of section 1720(a)(2) is to require that the work fall within one of the types of covered work enumerated" in section 1720(a)(1). (*Orange County Biosolids*, at p. 4.) Because the hauling of biosolids was "not an activity encompassed by" section 1720(a)(1), it was "not covered work under section 1720(a)(2)." (*Orange County Biosolids*, at p. 4.)

In an amicus brief, the District and others urge us to defer to the interpretation of section 1720(a)(2) in *Orange County Biosolids*. They argue plaintiffs' position contradicts the Department's long-standing interpretation of section 1720(a)(2). They assert the Department has ruled three times in the last 15 years that the activities encompassed by section 1720(a)(2) must be limited to those listed in section 1720(a)(1). They cite *Orange County Biosolids* and two other Department decisions. (See Dept. of Industrial Relations, PW Case No. 2006-022 (Jan. 12,

---

[15] (Dept. of Industrial Relations, PW Case No. 2005-009 (Apr. 21, 2006) <https:www.dir.ca.gov/OPRL/coverage/ year2006/2005-009.pdf> [as of Mar. 29, 2021] (*Orange County Biosolids*)). All Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

2007) <https:www.dir.ca.gov/OPRL/coverage/year2007/2006-022.pdf> [as of Mar. 29, 2021]; Dept. of Industrial Relations, PW Case No. 2005-039 (Apr. 25, 2007) <https://www.dir.ca.gov/OPRL/coverage/year2007/2005-039.pdf> [as of Mar. 29, 2021].)

Deference to these decisions is unwarranted. The Department's interpretation in these decisions is neither long-standing nor consistent. Contrary to amici curiae's argument, these decisions do not span 15 years. All three were issued within a 13-month period in 2006 and 2007. Before and after that time, the Department gave a broader meaning to the term work in section 1720(a)(2). In 2002, the Department concluded that the hauling and disposing of wastewater materials for a utility district qualified under section 1720(a)(2) "because it is work done for a utility district." (Dept. of Industrial Relations, PW Case No. 2002-005 (July 1, 2002) p. 2 <https://www.dir.ca.gov/OPRL/coverage/year2002/2002-005.pdf> [as of Mar. 29, 2021].) Later the same year, it concluded the inspecting and testing of sewer lines for a sanitation district was subject to prevailing wage requirements because it was "work done for" a covered district. (Dept. of Industrial Relations, PW Case No. 2001-068 (July 19, 2002) p. 6 <https://www.dir.ca.gov/OPRL/coverage/year2002/2001-068.pdf> [as of Mar. 29, 2021].) Finally, the Department ruled in 2016 "that maintenance of equipment for a water district constituted a public work" under section 1720(a)(2). (*Kaanaana, supra*, 29 Cal.App.5th at p. 796, citing Dept. of Industrial Relations, PW Case No. 2015-016 (Feb. 5, 2016) <https://www.dir.ca.gov/OPRL/coverage/year2016/2015-016.pdf> [as of Mar. 29, 2021].) None of those decisions

suggested that the range of activities that qualify as "work" under section 1720(a)(2) is limited by section 1720(a)(1).

Where, as here, an administrative body has repeatedly changed its stance on the scope of a statute over a short period, its position does not warrant the deference it might typically be accorded. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, fn. 7.) Moreover, as the Court of Appeal noted, Department has "de-designated" these past decisions as precedential, suggesting Department has concluded they should not be entitled to deference. (*Kaanaana, supra*, 29 Cal.App.5th at p. 795.) Finally, the issue here is "a pure one of statutory interpretation"; thus, Department has no " ' "comparative interpretative advantage over the courts." ' " (*Duncan, supra*, 162 Cal.App.4th at p. 304; see also *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 236.)

### 3. Other Claims

Barrett argues there is no logical reason why the Legislature would have applied the prevailing wage laws to a broader range of activities when done for covered districts than for other government agencies.[16] But it offers no reason to think that belt sorters materially differ from laborers whose work falls under the other provisions of section 1720(a), in terms of their

---

[16] Barrett cites *Westbrook v. Mihaly* (1970) 2 Cal.3d 765 for support. The case is inapposite. *Westbrook* addressed a claim by San Francisco voters that the state Constitution's two-thirds majority approval requirement for incurring public debt (Cal. Const., art. XI, § 18) violated their equal protection rights by weighting individual votes differently. (*Westbrook*, at p. 781.) The opinion manifestly involves a completely different question from that presented here.

vulnerability to exploitation, their risk of receiving substandard wages, or their need for higher compensation to make up for the lack of benefits normally associated with public employment.

Neither the statute nor its legislative history explains why the Legislature singled out work done for covered districts in section 1720(a)(2). But the fact remains that it did. The Legislature is permitted to attack problems one step at a time, deciding in which context an issue is most pressing. "Such line drawing is the province of legislative bodies, and 'the precise coordinates of the resulting legislative judgment [are] virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.' " (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 210.)

*D.  Conclusion*

The most reasonable interpretation of "public works" in section 1720(a)(2) is that it is not limited by a different definition set out in section 1720(a)(1). This interpretation gives effect to all parts of the covered district provision and recognizes the difference between definitions based on the tasks performed and section 1720(a)(2), whose coverage turns on the governmental entity for which the work is done. The belt sorters' labor qualifies as "public works" under section 1720(a)(2).

## III.  DISPOSITION

The judgment is affirmed.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

KAANAANA v. BARRETT BUSINESS SERVICES, INC.

S253458

Concurring Opinion by Justice Kruger

I agree with the majority opinion, which I have signed. The result in this case follows from the text of Labor Code section 1720, which defines the term "public works" much more broadly when the work is performed for irrigation districts, utility districts, and others of a similar type than when it is performed for any other kind of public agency. Wherever the outer limits of this special districts definition may lie, the belt-sorting work performed by plaintiffs in this case falls well within its scope. I write separately, however, to call attention to the seeming incongruity in the statute we are interpreting: Why, precisely, did the Legislature choose to treat work for utility and other covered districts so differently from work for other public agencies? (See maj. opn., *ante*, at p. 27.) Whatever reasons the Legislature may once have had, they have been lost in the mists of time. Now, more than 80 years after the statute was first enacted, the Legislature may wish to revisit the issue.

Part of the mystery stems from the nature of the statutory definition in Labor Code section 1720. It so happens that this is a prevailing wage case, but section 1720 is not part of the prevailing wage law. It is, rather, the product of a 1930's consolidation of a series of public works definitions, each adopted to apply only to an individual statute, into a single omnibus definition simultaneously applicable to a chapter's worth of statutory protections — including, but not at all limited to, the prevailing wage law. (Stats. 1937, ch. 90, § 1720, p. 241;

1

see Stats. 1929, ch. 793, § 1, p. 1603 [prior definition for eight-hour day statute]; Stats. 1931, ch. 397, § 4, pp. 911–912 [prior definition for the Prevailing Wage Act]; Stats. 1931, ch. 398, § 3, p. 914 [prior definition for the Public Works Alien Employment Act]; Stats. 1933, ch. 174, § 1, p. 621 [prior definition for prohibition on charging fees to place workers in public work].) That consolidation resulted in a multiprong definition under which irrigation, utility, reclamation, improvement, and similar special districts, alone among public agencies, were singled out to have an apparently broader slice of their activities treated as public works. (See Lab. Code, § 1720, former subd. (b), enacted by Stats. 1937, ch. 90, § 1720, p. 241; Lab. Code, § 1720, subd. (a)(2).)

This is at least a little peculiar. There is nothing immediately and obviously distinctive about irrigation districts, reclamation districts, and the like, that explains why they should be singled out in this fashion. The prong of the definition governing irrigation and other special districts first appeared, in substantially similar form, in a maximum-hour law. (See Stats. 1929, ch. 793, § 1, p. 1603.) It is not clear why the maximum-hour law had included a special definition for the covered districts, however, nor is it clear why the Legislature saw fit to apply the same definition for purposes of all of the other public works protections in the Labor Code. Certainly the Legislature is entitled to draw such distinctions. (See maj. opn., *ante*, at p. 27.) But if the Legislature had a considered reason for this differential treatment of various kinds of public agencies, that reason is not readily apparent from the historical record.

This feature of the statutory public works definition was apparently obscure enough that, for decades after its enactment,

it appears no one thought to apply the language of the special districts definition to the sort of work plaintiffs here perform. That omission does not license us to disregard the language of the governing definition, which is most naturally read to cover such work, and the majority opinion rightly declines to do so. But it does suggest that any incongruity in the scope of public works coverage for these districts, as opposed to other public entities, may simply have flown under the radar until now. With today's decision, that is no longer the case. Whether the result is desirable policy is a matter beyond our purview, but it is not beyond the Legislature's. The Legislature can, if it sees fit, adjust the statutory definition to align with its current conception of the appropriate scope of the prevailing wage law and the other protections to which the definition applies.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Kaanaana v. Barrett Business Services, Inc.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 29 Cal.App.5th 778
**Rehearing Granted**

_____

**Opinion No.** S253458
**Date Filed:** March 29, 2021
_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  John Shepard Wiley, Jr.

_____

**Counsel:**

Hayes Pawlenko, Matthew B. Hayes and Kye D. Pawlenko for Plaintiffs and Appellants.

Hinshaw & Culbertson, Frederick J. Ufkes and Filomena E. Meyer for Defendants and Respondents.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Claire Hervey Collins and Paul J. Beck for County Sanitation District No. 2 of Los Angeles County, League of California Cities, California State Association of Counties, California Special Districts Association, California Association of Sanitation Agencies and Association of California Water Agencies as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kye Pawlenko
Hayes Pawlenko LLP
595 E. Colorado Blvd., Suite 303
Pasadena, CA 91101
(626) 808-4357

Frederick J. Ufkes
Hinshaw & Culbertson LLP
350 S. Grand Ave., Suite 3600
Los Angeles, Ca 90071
(310) 909-8058